UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-CR-0111-CVE |
| ) | |
| ALEX SONNY GLOVER, JR., ) | |
| ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Suppress and Brief in Support (Dkt. # 13). Defendant, who is charged with possession of a firearm after conviction of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), seeks to suppress incriminating statements he made to police during the course of a search of his residence on May 13, 2005. The Court held an evidentiary hearing on the motion on August 31, 2005, at which Officer R.P. Leatherman of the Tulsa Police Department ("TPD") testified on behalf of plaintiff.

**I.**

On May 13, 2005, seven TPD officers approached a residence located at 210 West Golden Street in Tulsa, Oklahoma to execute a search warrant. The warrant, which had been issued by a Tulsa County District Court judge, describes the exterior of the house and provides that the residence was believed to contain cocaine, drug paraphernalia, monies derived from the sale of illegal drugs, guns, cellular phones, pagers, records, ledgers, keys, unexplained wealth, surveillance

equipment, and proof of residency. The warrant names Chino Conchitias in the caption of the warrant, although no name appears in the text of the warrant.[1]

Upon reaching the residence, officers discovered a locked chain link fence surrounding the house. According to the testimony at the suppression hearing, defendant exited the house, and the officers asked him who he was and who else was in the house. Defendant responded that his stepson, Chino Conchitias, was inside the house and called Conchitias to the front porch. Conchitias exited the house and proceeded to unlock the fence for the officers, who walked with Conchitias to the front porch where defendant stood. When asked, Conchitias stated that another individual, named Tamara, was inside the house. The officers placed both defendant and Conchitias in handcuffs for officer safety during the search. Defendant and Conchitias were escorted back into the house, where Conchitias was served with the search warrant. After entering the residence, the officers called out to inquire into whether other individuals were in the house. Tamara, the individual Conchitias had previously stated was inside the house, came to the front of the house, where officers placed her in handcuffs.[2] Defendant, Conchitias, and Tamara remained in handcuffs seated on a couch while the officers conducted a search of the residence. During the course of the search, the officers seized numerous items, including a .32 caliber Smith and Wesson handgun in the northwest bedroom of the house. Although testimony revealed some confusion regarding the precise location of the gun in the northwest bedroom, it appears that is was located in a fold-up bed. Possession of that gun is the basis of the government's charge against defendant.

---

[1]   The affidavit submitted by Officer Leatherman to acquire the warrant makes repeated reference to Conchitias; it contains no references to defendant.

[2]   The officers subsequently released Tamara.

After the house had been cleared, Officer Leatherman asked the three detained individuals who lived in the residence. Defendant stated that he resided in the house, while Conchitias and his companion, Tamara, stated that they did not live in the house.[3] Defendant also said that the northwest bedroom, the room in which the gun was found, was his bedroom. Officer Leatherman testified that defendant volunteered this statement regarding the location of his bedroom. Subsequent to the search, police officers placed defendant and Conchitias under arrest. When Officer Leatherman informed defendant and Conchitias that they were going to jail for possession of marijuana and the gun, defendant stated, "The gun and marijuana are mine, not his."

Defendant seeks to exclude two incriminating statements: (1) his statement informing police officers that his bedroom was the northwest bedroom; and (2) his statement that the gun and marijuana belonged to him, not Conchitias. Defendant seeks to suppress these statements on both Fourth and Fifth Amendment grounds.

## II.

Defendant argues that his initial detention by police upon their arrival at his home was without probable cause and, therefore, an unlawful seizure in violation of the Fourth Amendment. As a result, he claims, his subsequent statements should be suppressed, as the byproducts of an illegal seizure. The government denies that defendant's initial detention was a formal arrest for Fourth Amendment purposes.

---

[3] Officer Leatherman testified that he did not believe Conchitias when he informed him that he did not reside at the house.

3

>The Fourth Amendment provides,
>
>The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Fourth Amendment protection against unreasonable seizure includes protection against seizure of the person. United States v. Maddox, 388 F.3d 1356, 1360 (10th Cir. 2004). Any evidence obtained as a result of an illegal seizure is subject to exclusion at trial. Id. at 1361 (citing Weeks v. United States, 232 U.S. 383 (1914)).

Though, as a general rule, a seizure of the person requires a showing of probable cause on the part of law enforcement officers, see, e.g., Dunaway v. New York, 442 U.S. 200, 208 (1981), the courts have recognized certain exceptions to this rule for detentions that fall short of a formal arrest. Indeed, "some seizures can be reasonable under the Fourth Amendment without probable cause where the seizure is inherently less intrusive than an arrest, is justified by substantial law enforcement interests, and the police have reasonable articulary suspicion of criminal activity." United States v. Ritchie, 35 F.3d 1477, 1480 (10th Cir. 1994).

In Michigan v. Summers, 452 U.S. 692 (1981), the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705. The Court reasoned that once a "neutral and detached magistrate" determined that probable cause existed to believe that criminal activity was occurring within a residence and, on that basis, sanctioned a search of the premises, the detention of one of the residents during the search constituted a significantly less intrusive act than the search itself. Id. at 701. In reaching its holding, the Court recognized three

governmental interests justifying detention: (1) the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found; (2) minimizing the risk of harm to the officers; and (3) the orderly completion of the search. Id. at 702-03.

In a recent case, the Court reaffirmed the holding of Summers, and expanded its reach to permit the use of "reasonable force to effectuate the detention" of a resident. Mueller v. Men, 125 S. Ct. 1465, 1470 (2005). In Mueller, the Court upheld the use of handcuffs during a proper Summers detention. The Court acknowledged that the use of handcuffs constituted a separate intrusion and one more substantial than the one upheld in Summers. Id. Nevertheless, the Court determined that the circumstances--a search for weapons in the residence of a wanted gang member--warranted the further intrusion. Id. at 1471.

The Court is mindful of the argument advanced by defense counsel at the suppression hearing that Summers does not provide law enforcement officials with unlimited license to intrude on an occupant's person solely on the basis of a valid search warrant. Nevertheless, the Court holds that the actions of police officers in handcuffing and detaining defendant were well within the parameters set by Summers and Mueller.[4] The Court observes that Officer Letterman's testimony that certain officers had their guns drawn during part of the search raises a question of whether the presence of drawn guns necessarily transforms a lawful detention under Summers into an unlawful

---

[4] At the suppression hearing, defense counsel emphasized that Conchitias, not defendant, was named in the warrant authorizing search of the residence at 210 West Golden Street. In Mueller, the Court dismissed the relevance of such a consideration, since the warrant in question "was concerned not with individuals but with locations and property." 125 S. Ct. at 1470 n.2. As the Court noted, "Summers makes clear that when a neutral magistrate has determined police have probable cause to believe contraband exists, the connection of an occupant to a home alone justifies a detention of that occupant." Id. (internal quotation marks omitted).

5

arrest. In light of the officer's testimony that the officers likely placed their guns back in their holsters upon securing the house, the Court declines to find that this fact makes the instant situation beyond the realm of Summers. Moreover, the Court concludes that the government interest in maintaining officer safety during the course of a search for illegal drugs justifies the degree of force utilized to restrain the defendant in this case. Summers, 452 U.S. at 702 (noting that even though no special danger was present in the record, "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence"). Since the Court holds that defendant's detention was not unlawful, defendant's motion to suppress his later statements on the ground that they were the products of an unlawful seizure is, therefore, denied.[5]

### III.

Alternatively, defendant contends that since he was not provided with a Miranda warning until well after the completion of the search of his residence, his statements should be suppressed as made in violation of his Fifth Amendment right not to incriminate himself.

The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. In Miranda v. Arizona, 384 U.S. 436 1966), the Supreme Court detailed a now well-established protocol to be utilized by police officers while detaining individuals they suspect of criminal activity. Before Miranda is applicable,

---

[5] At the hearing on defendant's motion to suppress, defense counsel urged the Court to consider United States v. Vogl, No. 99-1583, 2001 WL 209440 (10th Cir. Mar. 2, 2001). The sole issue on appeal in Vogl was not whether police officers had legally detained defendant under Summers, but instead whether police officers legally searched defendant's *purse* which defendant was wearing when officers encountered her in the driveway outside the residence being searched. Vogl is inapposite.

6

however, two conditions must be met: the suspect must be in custody, and the questioning must meet the legal definition of interrogation. Ritchie, 35 F.3d at 1485. Since the parties do not appear to dispute the issue of defendant's custody at the time the statements were made, the Court considers only whether defendant was subject to interrogation for the purposes of Miranda.[6]

The Fifth Amendment does not bar the admission of volunteered statements. "If an individual voluntarily speaks without interrogation, the Fifth Amendment's protection is not at issue, and the statements are admissible." United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993). The protections of Miranda are only necessary in the presence of either express questioning or "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301(1980).

Defendant seeks, first, to suppress his statement regarding the location of his bedroom. At the suppression hearing, Officer Leather testified as follows:

Q: ... And at what point did Mr. Glover say the northwest bedroom is mine?

A: Whenever I asked whoever lived there, he identified it then as his.

Q: So that was not in direct response to a question, who lives – who stays in the northwest bedroom?

A: No, not that I remember, no.

---

[6] The Court recognizes that whether or not defendant was in custody for the purposes of Miranda is debatable. While the Court's holding on defendant's Fourth Amendment argument may control, see Ritchie, 35 F.3d at 1485 (noting that a determination that a defendant was merely detained for Summers purposes supported the conclusion that a defendant was not in custody for the purposes of Miranda), the Court need not address this question in light of its holding on the interrogation prong of the Fifth Amendment inquiry.

7

Given the opportunity, defense counsel did not dispute this account. Rather, he focused on Officer Leatherman's question regarding who lived in the house.[7]

If the exchange between defendant and Officer Leatherman proceeded as described--and there is no evidence to the contrary--the Court finds it difficult to conclude that when Officer Leatherman asked defendant who resided in the house that he should have known the inquiry would be "reasonably likely" to cause defendant to identify as his the very room in which police officers had previously discovered a gun. Though defense counsel states in his motion to suppress that he infers from defendant's statement that he must have been subject to "active questioning" by police, there is no evidence supporting such a claim. Defendant's motion to suppress his remark regarding the location of his bedroom on Fifth Amendment grounds is, therefore, denied.

Defendant also seeks to suppress the statement he made to police indicating that the gun and marijuana discovered by police belonged to him, not his stepson. Again, there is simply no evidence from which to conclude that defendant made this statement in the face of "express questioning or its functional equivalent," Innis, 446 U.S. at 301. Officer Leatherman testified that he informed defendant and Conchitias of the basis for their arrest--the possession of marijuana and the gun--simply to let them know why they were being arrested. Defendant, in turn, stated "The gun and marijuana are mine, not his." Whatever the reason for defendant's declaration, the Court is unable to conclude that it was the result of anything that would qualify as interrogation under the applicable

---

[7] While defense counsel made much of Officer's Leatherman's inquiry into who resided in the house, the Court determines that, under the circumstances, the question was one "normally attendant to arrest and custody," Innis, 446 U.S. at 301, and, therefore, did not require a Miranda warning.

<u>Miranda</u> standards. Defendant's motion to suppress his statement regarding the ownership of the marijuana and the gun is, therefore, denied.

## IV.

For the reasons provided above defendant's motion to suppress (Dkt. # 13) is hereby **denied**.

**IT IS SO ORDERED** this 2nd day of September, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT